NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-60

COMMONWEALTH

vs.

SHAWN H. BAKER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Shawn H. Baker, appeals from his convictions, after a jury trial in the District Court, of indecent assault and battery on a child, G. L. c. 265, § 13B, and assault and battery, G. L. c. 265, § 13A (a). We conclude that, where the defendant slapped the victim on the buttocks, commented "cute butt," and then stripped the victim in her bedroom, there was sufficient evidence that the touching was indecent. Further concluding that neither the first complaint testimony nor the trial judge's statements about reasonable doubt during jury empanelment created a substantial risk of a miscarriage of justice, we affirm.

1. Sufficiency of the evidence. "When reviewing the denial of a motion for a required finding of not guilty, 'we consider the evidence introduced at trial in the light most favorable to the Commonwealth, and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019), quoting Commonwealth v. Faherty, 93 Mass. App. Ct. 129, 133 (2018). "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Tsonis, 96 Mass. App. Ct. 214, 216 (2019), quoting Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016).

"To sustain a conviction of indecent assault and battery on a child, the Commonwealth must prove, beyond a reasonable doubt, that (1) the child was not yet fourteen years old at the time of the offense, (2) the defendant intentionally touched the child without legal justification or excuse, and (3) the touching was indecent." Commonwealth v. Cruz, 93 Mass. App. Ct. 136, 138 (2018). See G. L. c. 265, § 13B. Here, the defendant challenges only the third element, that the defendant's touching of the victim's buttocks was indecent.

"[T]he intentional, unjustified touching of private areas such as the breasts, abdomen, buttocks, thighs, and pubic area of a female constitutes an indecent assault and battery."

2

Commonwealth v. Colon, 93 Mass. App. Ct. 560, 562 (2018), quoting Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 184 (1991). "These areas have been classified as 'sexual parts,'" "[b]ut this list is 'not intended to be exhaustive.'" Colon, supra, quoting Commonwealth v. Rosa, 62 Mass. App. Ct. 622, 625 (2004). "The test is an objective one . . . and looks to the totality of circumstances." Commonwealth v. Gomes, 483 Mass. 123, 126 (2019).

"Although the type of conduct that constitutes an indecent touching is not defined in G. L. c. 265, § 13B, an 'indecent' touching has been understood as one that 'offends contemporary standards of decency and moral values.'" Gomes, 483 Mass. at 126, quoting Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 616 (2018). Here, the defendant slapped the victim on the buttocks and said "[s]omething about having a cute butt." See Commonwealth v. Quinn, 439 Mass. 492, 498 n.12 (2003) (buttocks are included as "private area" of body). Cf. Cruz, 93 Mass. App. Ct. at 140 ("No suggestive comments, propositions, or gestures accompanied the hug"). The victim testified that she left the room after being slapped but did not say anything to her father as "I think I was just too scared." Later that day, the defendant followed the victim into a bedroom, tickled her, and pulled down her pants to expose her genitalia. The victim testified that "[she]

3

saw his hand raised like he was going to go and touch [her]," but ran to the bathroom before he could do so. This later interaction provides further context for the earlier touching, underscoring the indecent nature of the defendant's earlier slap of the victim's buttocks. See Commonwealth v. Shore, 65 Mass. App. Ct. 430, 432 (2006) (in assessing sufficiency of evidence of indecent assault and battery, appellate court considers "all the circumstances surrounding the touching and . . . the reasonable inferences that could be drawn therefrom").

The defendant's argument that the touching cannot be considered indecent as it was too short in duration or not sexual in nature is unsupported by case law. Although certain cases featured touching that was longer in duration, see, e.g., Gomes, 483 Mass. at 126 (defendant held victim's waist "forcing her to move her body such that her 'butt' came into repeated contact with his genitals"), neither these cases nor G. L. c. 265, § 13B, impose a threshold duration for a touching to be indecent. Likewise, although the defendant's comment alone may not have been as explicitly sexual as in other cases, see, e.g., Rosa, 62 Mass. App. Ct. at 624 ("While the defendant's thumb was in the victim's mouth, he asked her, 'Do you know how to suck on it?'"), the evidence of the defendant's touching the victim's buttocks, taken together with his comment and his later actions, amply supports the reasonable inference that the touching was

4

indecent.  See also Mosby, 30 Mass. App. Ct. at 185 ("defendant placed his hand on the complainant's buttocks without her consent, and almost immediately made a proposal that had distinctly sexual overtures").  Accordingly, as there was sufficient evidence that the touching was indecent, the judge properly denied the defendant's motion for a required finding of not guilty.

2.  First complaint.  "Pursuant to the first complaint doctrine, we 'no longer permit in evidence testimony from multiple complaint witnesses, limiting the testimony to that of one witness' who, where feasible, will be the first person told of the sexual assault."  Commonwealth v. Aviles, 461 Mass. 60, 67-68 (2011), quoting Commonwealth v. King, 445 Mass. 217, 242-243 (2005), cert. denied, 546 U.S. 1216 (2006).  "A complainant, as well as the first complaint witness, may testify as to the details of the complaint itself and why the complaint was made at that particular time."  Commonwealth v. McCoy, 456 Mass. 838, 845 (2010).  "What the [alleged victim or witness] may not do, however, is testify to the fact that she 'told' others, apart from the first complaint witness, about the sexual assault, even where the details of the conversation have been omitted."  Commonwealth v. Lewis, 91 Mass. App. Ct. 651, 657 (2017).  As the defendant did not object to the testimony he now challenges, we consider whether any error in admitting the challenged

5

testimony created a substantial risk of a miscarriage of justice. See Commonwealth v. Kebreau, 454 Mass. 287, 297 (2009).

Here, the father's brief statement that the victim "told my wife and was talking to both of us about it, and --" was almost immediately interrupted by the prosecutor.[1] Moreover, as the prosecutor ended his questioning after the father answered this subsequent question and did not again reference the father's interrupted comment, there was minimal chance that the father's comment affected the jury's analysis of the victim's credibility. See Kebreau, 454 Mass. App. Ct. at 298 ("brief mention that she called [the Department of Social Services] only for purposes of obtaining information, because she was a relatively new counsellor and wanted to follow proper procedures, could have had slight, if any, effect on the outcome").

The defendant's claim that the first complaint testimony should not have included the victim's description of what happened in the bedroom is without merit. "[A] first complaint witness may testify to the circumstances surrounding the initial complaint." King, 445 Mass. at 246. Such circumstances include

_____

[1] The prosecutor's following question, whether the father notified police, suggests that it was not the prosecutor's intent to elicit reference to a second complaint.

6

"the events or conversations that culminated in the complaint; the timing of the complaint; and other relevant conditions that might help a jury assess the veracity of the complainant's allegations or assess the specific defense theories as to why the complainant is making a false allegation." Id. Here, the victim's description of what the defendant did in the bedroom after slapping her buttocks offered jurors a "complete picture . . . to make a fairer and more accurate assessment of the validity of that accusation, based on specific information about the people involved." Id. at 247. See Commonwealth v. Roby, 462 Mass. 398, 410 (2012) ("The evidence was properly admitted to provide context to [victim's] first complaint testimony"). Furthermore, the judge instructed the jurors, "you may not consider the testimony of the father in evaluating the alleged victim's testimony about the non-sexual assault charge," further reducing any unfair prejudice to the defendant. Accordingly, the testimony did not create a substantial risk of a miscarriage of justice.

3. Jury empanelment. During the questioning of juror number 2, who had been a police officer for almost twenty years, the trial judge stated, "You know, as coming from law enforcement, as you know because you've testified, . . . . the standard of proof, as you know is a pretty high standard." The juror reaffirmed multiple times that he could be impartial and

7

that he was familiar with the standard required for conviction. During the questioning of juror number 5, the judge told the juror that "[t]he Government has the burden of proof. They've got to prove he's guilty beyond a reasonable doubt. It's a pretty high standard. It's you have to an abiding conviction to a moral certainty that he's guilty, the highest degree of certainty possible in matters relating to human affairs." These were accurate statements of the law, though, of course, no substitute for a full reasonable doubt instruction. See Commonwealth v. Seabrooks, 433 Mass. 439, 442 (2001), quoting Commonwealth v. Vann Long, 419 Mass. 798, 803 (1995) (trial judge afforded "large degree of discretion" during empanelment).

During the final charge, the judge provided a complete and proper definition of reasonable doubt. We discern no realistic possibility that the two jurors in question would have considered the judge's earlier statements during empanelment as negating the later reasonable doubt instruction. See Commonwealth v. Imbert, 479 Mass. 575, 587 (2018) ("Juries are presumed to follow the judge's instructions). There was no

substantial risk of a miscarriage of justice.

Judgments affirmed.

By the Court (Ditkoff, Hand &
  Grant, JJ.[2]),

Clerk

Entered:  August 12, 2025.

---

[2] The panelists are listed in order of seniority.